**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BENIGNO BANDERA HERNANDEZ,

                     Petitioner,

    vs.

MARKWAYNE MULLIN, *et al.*,[1]

                     Respondents.

Case No.: 2:26-cv-00942-GMN-BNW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Benigno Bandera Hernandez's Petition for Writ of Habeas Corpus, (ECF No. 1), and Motion for Preliminary Injunction, (ECF No. 2).[2]  Federal Respondents Markwayne Mullin, Todd Blanche, Todd Lyons, Brian Wilcox, the United States Department of Homeland Security ("DHS"), and United States Immigration and Customs Enforcement ("ICE"), filed Responses, (ECF Nos. 7, 8).[3]  For the reasons discussed below, the Court GRANTS the Petition.

## I.    BACKGROUND

Petitioner Benigno Bandera Hernadez is a citizen of Mexico who came to the United States in September 2023. (I-213 at 2, Ex. A to Fed. Resp., ECF No. 7-2); (Notice to Appear ("NTA") at 1, Ex. A to Fed. Resp., ECF No. 7-2).  Petitioner presented at the Nogales, AZ DeConcini Port of Entry, where he was granted humanitarian parole into the United States. (NTA at 1, Ex. A to Fed. Resp.); (I-213 at 2, Ex. A to Fed. Resp.).  On February 20, 2026,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi.  The Clerk of Court is kindly directed to update the docket to reflect this substitution.

[2] Because the Court grants the Petition, it DENIES the Motion for Preliminary Injunction as moot.

[3] Respondent John Mattos filed a separate Response, (ECF No. 6), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

Petitioner was detained by ICE and was placed into removal proceedings. (Pet. 2:6–12, ECF No. 1). On March 10, 2026, Immigration Judge ("IJ") Ann McDermott denied Petitioner's request for a custody redetermination, explaining that she was precluded from conducting a custody redetermination where the respondent was charged as an arriving alien. (*See* IJ Order at 1, Ex. B to Fed. Resp., ECF No. 7-3).

## II.    LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Statutory Detention Scheme

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, two statutory provisions generally govern the government's authority to detain noncitizens during the pendency of removal proceedings: 8 U.S.C. §§ 1225(b) and 1226. In *Jennings v. Rodriguez*, 538 U.S. 281 (2018), the Supreme Court explained these statutory provisions. The Court explained that § 1225 generally governs "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." *Id.* at 287. In contrast, § 1226 "generally governs the process of arresting and detaining" noncitizens already "inside the United States." *Id.* at 288.

Section 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *Id.* at 289. Section 1225(b) applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Id.* at 288 (citing § 1182(d)(5)(A)).

Noncitizens subject to detention under either sub-section of § 1225(b) may be temporarily released on humanitarian parole. *See Jennings*, 583 U.S. at 288. Humanitarian parole is authorized under 8 U.S.C. § 1182(d)(5)(A). Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Once humanitarian parole under § 1182(d)(5) is terminated, the noncitizen is "returned to the custody from which he was paroled." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

## III.   DISCUSSION

Petitioner argues that he is being wrongfully detained under 8 U.S.C. § 1225(b)(2)(A) and asks the Court to order his release on parole under 8 U.S.C. § 1226(a)(2)(B).  Federal Respondents argue that Petitioner is subject to mandatory detention under § 1225(b), based on the same "arriving [noncitizen]" argument that has previously been rejected by this Court, *see, e.g.*, *Quintana Cartaya v. Bernacke*, No. 2:26-CV-00438-GMN-MDC, 2026 WL 1229965, at *4 (D. Nev. May 5, 2026), and that was rejected in the class judgment in *Jacobo Ramirez v. Mullin*, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *4 (D. Nev. Mar. 30, 2026).  The Court finds Petitioner's detention is unlawful regardless of the section that governs his detention because his humanitarian parole under § 1182(d)(5)(A) was terminated in violation of the Due Process Clause of the Fifth Amendment.

### A.  Humanitarian Parole

As explained above, applicants for admission face mandatory detention under § 1225 but may be released on parole "for urgent humanitarian reasons or significant public benefit," under 8 U.S.C. § 1182(d)(5)(A).  *Jennings*, 583 U.S. at 287.  This exception to mandatory detention, often referred to as humanitarian parole, may be granted "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A).  Further, the implementing regulations require that a noncitizen "present neither a security risk nor a risk of absconding." 8 C.F.R. 212.5(b).  Thus, if a noncitizen has been granted humanitarian parole, it means that a DHS official decided that the individual did not pose a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

The agency can terminate humanitarian parole in two ways.  First, it terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1).  Second, if parole is not terminated automatically, either "the purpose for which parole was authorized" must have been

accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled."). In such instances, the noncitizens must be provided with written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i).

Regardless of the type of termination, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered *shall be executed*." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see also* 8 C.F.R. § 212.5(e)(2). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] *shall again be released* on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). Stated differently, unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official. *Id.* Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole. *Id.*

**B. Due Process**

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, "[i]t is well established

that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Petitioner here was paroled into the country in September 2023 under 8 U.S.C. § 1182(d)(5)(A). (NTA at 1, Ex. A to Fed. Resp.). Several courts in the Ninth Circuit have concluded that when a noncitizen is paroled under § 1182, the government cannot summarily revoke that parole without offending due process. *See Velasquez-Chinga v. Noem*, No. 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (collecting cases); *Mendez Oreilly v. Blanche*, No. 2:26-cv-00278-GMN-EJY, 2026 WL 1031192, at *3–5 (D. Nev. Apr. 16, 2026). Rather, due process for "parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for termination; and (3) an opportunity to rebut the reasons given for termination." *Araujo v. LaRose*, No. 25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (citing *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025) (analyzing factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976))). While not binding, the Court finds the reasoning in these cases persuasive and adopts it for the reasons discussed below.

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[4] Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors":

---

[4] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207. However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)). The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Accordingly, the Court will apply the *Mathews* test here.

(1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. *See Mathews*, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Further, the Supreme Court has recognized that a protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). In *Morrissey v. Brewer*, the Supreme Court explained that when placed on parole, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." 408 U.S. 471, 482 (1972). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84. Here, after inspection at the border in September 2023, Petitioner was paroled into the United States. That granting of parole created a protectable expectation of Petitioner's continued liberty, and the Court thus finds that the first factor weighs in favor of Petitioner.

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The implementing regulations for humanitarian parole require that a noncitizen "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Thus, the initial determination that Petitioner should be paroled "reflects a determination by the government that [Petitioner] is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018*); see Pinchi v.*

*Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria.").  Civil immigration detention is "nonpunitive in purpose and effect[,]" and is justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690.  Thus, in order to re-detain Petitioner, the government "must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." *Saravia*, 280 F. Supp. 3d at 1176.

The risk of erroneous deprivation of Petitioner's liberty interest is high where the government provides no justification for Petitioner's re-detention, and Petitioner has no opportunity to rebut that justification. *See Luo v. LaRose*, No. 25-cv-3848-LL-VET, 2026 WL 202872, at *3 (S.D. Cal. Jan. 27, 2026) (citing *Pinchi*, 792 F. Supp. 3d at 1035).  Here, Petitioner was not notified that his parole was terminated, nor has he been afforded any means to challenge the revocation of his parole or his continued detention; indeed, Petitioner's request for a bond hearing has already been denied by an IJ.  Petitioner appears to have no process to challenge the revocation of his parole, nor his continued detention.  Thus, the Court finds that the risk of erroneous deprivation is substantial.

The third and final *Mathews* factor considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.  The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208.  However, the government's interest in detaining Petitioner without a hearing is low. *See Morrissey*, 408 U.S. at 483

(explaining that "the State has no interest in revoking parole without some informal procedural guarantees"). Further, in "immigration court, custody hearings are routine and impose a 'minimal' cost." *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)). Indeed, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Accordingly, the Court concludes that the third *Mathews* factor also weighs in favor of Petitioner.

The Court thus finds that all three of the *Mathews* factors weigh heavily in favor of Petitioner, and therefore Petitioner was entitled to both notice and an opportunity to be heard before his humanitarian parole under § 1182(d)(5)(A) could be revoked. Because Petitioner received neither here, the Court finds that the revocation of his parole violates his rights under the Due Process Clause of the Fifth Amendment.[5]

**C. Relief**

Petitioner asks this Court to order his immediate release, or, in the alternative, to order that he receive a bond hearing immediately. (Pet. 2:18–25). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." *Id.* "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C.A. § 2243).

Here, the specific harm suffered by Petitioner was the termination of his parole without notice and an opportunity to be heard in violation of the Due Process Clause of the Fifth Amendment. Petitioner has been detained since February 20, 2026, despite receiving no

---

[5] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether Petitioner's detention violates the INA.

process prior to his re-detention. (Pet. 2:6–12).  The Supreme Court has consistently held that "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  While a post-deprivation hearing may be appropriate in situations that urgently require arrest, absent evidence of such urgent concerns, a pre-deprivation hearing is required to satisfy due process. *Id.* at 128; *Ortega*, 415 F. Supp. 3d at 970.  No such concerns are present here where Petitioner appears to have no criminal history.  Thus, "because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original).  Further, a bond hearing would not adequately vindicate Petitioner's rights.  Indeed, ordering a hearing while Petitioner remains detained would reward the government for failing to provide Petitioner any process before detaining him. *See id.*  The Court therefore finds that the appropriate remedy here is immediate release subject to the conditions of Petitioner's prior parole.

**IV.     CONCLUSION**

**IT IS HEREBY ORDRED** that Petitioner's Petition for Writ of Habeas Corpus, (ECF No. 1), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention **by May 29, 2026, between 12:00 p.m. and 3:00 p.m.**, subject to his prior conditions of parole.

**IT IS FURTHER ORDERED** that Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property upon his release.

**IT IS FURTHER ORDERED** that, prior to any re-detention of Petitioner, the government must provide no less than seven days' notice to Petitioner and must hold a constitutionally compliant pre-deprivation hearing before a neutral arbiter at which the government bears the burden of providing flight risk or danger by clear and convincing evidence.[6]  This Order does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

**IT IS FURTHER ORDERED** that the parties shall file a **JOINT** status report by **June 1, 2026**, to certify compliance with the Court's Order.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi.  The Clerk of Court is kindly directed to update the docket as well as the case caption to reflect this substitution.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is further directed to enter judgment in favor of Petitioner.

**DATED** this __28__ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[6] Given Petitioner's prolonged detention in violation of his constitutional rights, and "[b]ecause it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'— deprivation of liberty—is so significant," the Court finds it constitutionally necessary to impose this equitable remedy in order to minimize the risk of additional error. *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011).